UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| CYNTHIA K. EKEREN,<br><br>        Plaintiff,<br><br>vs<br><br>MEGAN J. BRENNAN,<br>POSTMASTER GENERAL, U.S.<br>POSTAL SERVICE,<br>        Defendant. | 5:20-cv-4005<br><br><br><br>**COMPLAINT AND REQUEST FOR<br>TRIAL BY JURY** |

COMES NOW Plaintiff Cynthia Ekeren and brings this action for sexual

discrimination against the above-named Defendant, Megan J. Brennan, Postmaster

General, U.S. Postal Service ("the USPS") as follows:

## THE PARTIES, JURISDICTION AND VENUE

1) This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e *et seq*. ("Title VII").

2) Ms. Ekeren is an adult resident of Lincoln County, South Dakota.

3) Defendant USPS is an agency of the United States government responsible for

providing postal service in the United States.

4) Ms. Ekeren is an employee of the USPS within the meaning of 42 U.S.C. §

2000e(f).

5) During her employment with the USPS, Ms. Ekeren has worked at one of its

Sioux Falls, South Dakota worksites.

6) Ms. Ekeren timely filed a Charge of discrimination alleging sexual discrimination

and retaliation.

7)   Ms. Ekeren received a Notice of Right Sue prior to instituting this action on October 15, 2019.

8)   Jurisdiction over this matter is pursuant to 28 U.S.C. § 1331 and § 1343(a)(3).

9)   Venue over this matter is pursuant to 28 U.S.C.§ 1391(b)(1)-(2) because the events or omissions giving rise to the claims occurred within the Southern Division of the District of South Dakota.

## FACTUAL ALLEGATIONS

10)   Ms. Ekeren has been employed by the USPS since September 2000.   At all times relevant to this Complaint, she was working for the USPS as a mail clerk.

11)   During her employment, Ms. Ekeren performed her job duties as a mail clerk in a manner that met her employer's expectations.

12)   In April 2018, Ms. Ekeren was subjected to unwanted, offensive sexual advances from a male co-worker who had previously made comments about his physical attraction to her appearance.  Specifically, he repeatedly asked for her home address and to be able to come to her home to massage her, and he told her that her body was driving him "crazy." Ms. Ekeren felt disgusted, anxious and worried about the situation because she could not entirely avoid contact with this co-worker in the performance of her duties.

13)   Ms. Ekeren told a female co-worker about the sexual harassment, and her female co-worker responded that their male co-worker had also made unwanted sexual advances to her, as well as making comments to her about his appreciation of Ms. Ekeren's body. Another female co-worker told Ms. Ekeren that the male employee had previously been accused of rape, and he had also harassed another female USPS employee.

2

14) Ms. Ekeren felt unsafe in her work environment because she had to continue encountering the offending male co-worker to do her job, and she had information that he was a serial harasser.

15) The USPS represents to the public and its employees by written policy that it is committed to providing a work environment free of sexual harassment and inappropriate sexual conduct.

16) USPS written policy is that "[t]he Postal Service's workplace must be one in which all employees are treated with dignity and respect by supervisors, subordinates, and coworkers.

17) USPS written policy is that "[s]upervisors and managers will take prompt action to prevent, address, and remedy workplace conduct that is contrary to this policy."

18) USPS written policy requires the USPS to be "committed to providing its employees a safe, productive, and inclusive workplace and will tolerate nothing less."

19) USPS written policy requires that "[a]lthough not every instance of inappropriate behavior may fit the legal definition of harassment, such behavior in the workplace undermines morale and violates the Postal Service's standards of conduct. Disciplinary action may result even if the conduct does not constitute harassment under the law."

20) USPS written policy requires that "[a]ll USPS managers and supervisors are responsible for preventing harassment and inappropriate behavior that could lead to illegal harassment and must respond promptly when they learn of any such conduct."

21) USPS written policy requires that "[a]ny USPS manager or supervisor who receives a complaint must see that a prompt and thorough investigation is conducted. Investigations of all forms of harassment must be done in accordance with the 'Initial

Management Inquiry Process (IMIP).' Materials are available in Publication 552, Manager's Guide to Understanding, Investigating, and Preventing Harassment. When harassment or inappropriate conduct is found, managers must take prompt and effective corrective action."

22) USPS written policy further requires that "[r]eprisal against employees who raise a claim of harassment, report inappropriate conduct, or provide evidence in any investigation is illegal and can result in disciplinary action…."

23) Ms. Ekeren was not able to locate information about where or how to report her sexual harassment complaint within the USPS facility. She relied upon the advice of co-workers about how to report.

24) On or about July 5, 2018, Ms. Ekeren was advised by a union representative that she should contact the local Human Resources ("HR") office to report sexual harassment.

25) On July 11, 2018, Ms. Ekeren called Deborah Lovelace, a USPS Labor Relations Specialist who was in a managerial role in its Sioux Falls HR office. Ms. Lovelace was not available, so Ms. Ekeren left a message requesting a call about her sexual harassment report.

26) By reporting sexual harassment to USPS management, Ms. Ekeren was engaged in protected activity within the meaning of Title VII.

27) Pursuant to USPS policy, Ms. Lovelace had an obligation to initiate a prompt and thorough investigation of Ms. Ekeren's claim of harassment.

28) On July 23, 2018, Ms. Lovelace responded to Ms. Ekeren's call with an email that requested Ms. Ekeren to send her phone number to Ms. Lovelace. Ms. Ekeren responded the same day with an email confirming her phone number and advising Ms. Lovelace of her availability to be interviewed.

29)  On July 26, 2018, Ms. Ekeren observed that she had a missed call from Ms. Lovelace.  As a result, she emailed Ms. Lovelace a "short explanation" of her sexual harassment report.  Ms. Ekeren explicitly stated she was sickened and stressed about what had happened to her, and she had heard that this co-worker had sexually harassed two other female co-workers and had previously been accused of rape.

30)  On July 31, 2018, Ms. Lovelace called Ms. Ekeren and conducted an initial interview regarding Ms. Ekeren's sexual harassment complaint.  Ms. Lovelace represented that she was going to speak to her supervisor and respond to Ms. Ekeren's complaint.

31)  Ms. Ekeren did not hear anything further from Ms. Lovelace until January 24, 2019, when Ms. Lovelace emailed Ms. Ekeren asking for her phone number.

32)  Between the July 31 phone call and the January 24, 2019 email, Ms. Ekeren had emailed Ms. Lovelace on September 10, 2018, on December 29, 2018 and on January 23, 2019.  Each email requested a follow up from Ms. Lovelace in reference to the sexual harassment report made in July 2018.

33)  Ms. Lovelace did not respond to any of Ms. Ekeren's emails until January 24, 2019, when Ms. Lovelace sent an email to Ms. Ekeren that stated: "Please prove your phone number so I can call you."

34)  Ms. Ekeren immediately provided her phone number.  However, Ms. Lovelace did not call her.

35)  On January 27, 2019, Ms. Ekeren sent an email to Ms. Lovelace and copied the email to an HR supervisor named Thomas Elias.  The email that reported Ms. Ekeren's concern that Ms. Lovelace had not investigated her complaint or responded to Ms. Ekeren's questions since July 2018.  Specifically, the email stated: "Its [sic] been 5 months since we

5

last spoke and I have yet to hear from you.  I have sent you several emails and have not received any kind of a response to any of them.  I am frustrated and very disappointed as to how this matter has been handled.  This is totally unacceptable and the Post Office has a responsibility to its employees to handle this in a timely manner.  My plan now is to follow up and communicate with your supervisor, Mr. Elias."

36)  On January 27, 2019, Ms. Ekeren sent Mr. Elias an email requesting a phone call to discuss her January 27 email to Ms. Lovelace.  She provided him with her work schedule to facilitate the meeting.

37)  On January 30, Mr. Elias contacted Ms. Lovelace to set up a meeting.  When Ms. Ekeren responded that she was available, Mr. Elias emailed her and asked her for her phone number.  Ms. Ekeren immediately sent him her phone number.  It was the same number she had previously sent Ms. Lovelace, twice.

38)  The parties had a 10-minute phone call.  As a result, on February 1, 2019, Ms. Ekeren emailed Mr. Elias the summary of her sexual harassment complaint.

39)  On February 8, 2019, Ms. Ekeren emailed Mr. Elias to ask if he had received the complaint summary that she sent to him on February 2.

40)  On February 11, 2019, Mr. Elias responded to Ms. Ekeren by email to advise that he had received her February 1 email, and he asked her to call him.  Ms. Ekeren immediately emailed him to advise him that her father has passed away and she would call him the following week.

41)  Ms. Ekeren called Mr. Elias and left messages for him to return her call on February 19, February 20, and February 22.  In fact, she called him three times on February 22.

42) On February 25, Ms. Ekeren emailed Mr. Elias requesting contact from him.

43) On February 27, Ms. Ekeren received a disciplinary action for attendance issues.

44) During the disciplinary counseling meeting with her direct supervisor, Ms. Ekeren complained that her sexual harassment report was being ignored.  Ms. Ekeren's supervisor claimed he had never heard of her report but would initiate an investigation on her behalf.

45) On February 2, 2019, Ms. Ekeren was interviewed by her supervisor about her sexual harassment complaint against her male co-worker.

46) In June 2019, Ms. Ekeren still had not received any further information or follow up about her sexual harassment complaint from USPS management.

47) On June 18, 2019, Ms. Ekeren filed an internal EEO complaint, including an allegation that her complaint had not been timely or thoroughly investigated.

48) On June 25, 2019, Mr. Elias contacted Ms. Ekeren to say that he was the reason that her sexual harassment complaint had been delayed.  He told Ms. Ekeren her supervisor's report to him about the investigation had been provided to him in incomplete form and that he had failed to remember to tell the supervisor to follow up and complete it.

49) At the June 25 meeting, Mr. Elias told Ms. Ekeren that Ms. Lovelace had originally failed to investigate Ms. Ekeren's sexual harassment complaint because Ms. Lovelace was relatively new to the USPS and was not trained on how to investigate.

50) At the June 25 meeting, Mr. Elias told Ms. Ekeren that he believed her complaint and stated that her male co-worker should have been "walked out the door" but that he felt it was too late to do anything about her complaint.

51)   At the June 25 meeting, Mr. Elias further informed Ms. Ekeren that he intended

to place some "information" about how to identify and report sexual harassment in the

workplace and they discussed that Ms. Ekeren had been unable to locate any information

about how to report in her Sioux Falls workplace.

52)   On June 26, 2019, Ms. Ekeren's supervisor met with her to advise her that no

formal action was going to be taken against her co-worker because there were no witnesses.

He also stated that her co-worker would be told that a sexual harassment report would be

noted in his personnel file.

## CAUSES OF ACTION

### COUNT 1:  SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Hostile Work Environment)

53) Plaintiff re-alleges the facts asserted in paragraphs 1-52 of this Complaint.

54) Under **Title VII** and its own policies, the USPS has an affirmative obligation to

take all reasonable steps necessary to prevent harassment, discrimination, or retaliation. In

order to comply with this obligation, it must **investigate** all complaints of harassment,

discrimination, or retaliation.

55) Over a period of eleven months, three (3) different USPS supervisors failed to

timely complete an investigation into Plaintiff's sexual harassment complaint.

56) Because of the USPS' delay in completing the investigation, Plaintiff's sexual

harassment action did not result in any disciplinary action even though its HR supervisor told

Plaintiff that he believed her complaint and thought her harasser should be "shown the door."

57) The USPS failed to properly enforce its sexual harassment policy.

58) The USPS failed to properly train its supervisory staff or its HR employees about

its employee's rights to be protected from sexual harassment.

8

59) The USPS failed to properly post reporting information or to provide adequate training to its employees about Title VII protections and reporting.

60) Plaintiff is a member of a protected class.

61) Plaintiff was subject to unwelcome sexual harassment.

62) The harassment Plaintiff complained of was based upon sex.

63) Plaintiff reported that other female members of the USPS had been harassed by the same employee that harassed her.

64) The harassment created a hostile work environment.

65) Plaintiff's USPS managers and supevisors knew of the conduct she complained of and failed to take prompt and appropriate remedial action.

66) The USPS took no reasonable steps to initiate an investigation, to timely conclude the investigation or to prevent or stop the harassment.

67) Plaintiff's USPS managers and supervisors manifested indifference or unreasonableness to her legal right to be protected from sexual harassment in the workplace in light of the facts that they knew or should have known.

68) Plaintiff's USPS managers and supervisors treated female employees differently than male employees in the terms and conditions of their employment.

69) When requested to separate Plaintiff and the harassing co-worker to different shifts or positions so Plaintiff could work without fear of reprisal or further harassment by her male co-worker, her supervisors declined because of how that could negatively affect the male co-worker.

70) As a direct and proximate result of the USPS' unlawful conduct, Plaintiff has suffered a loss of her future employment income and benefits, mental anguish, physical harm, distress, embarrassment, loss of reputation and other damages.

## COUNT 2:  SEXUAL DISCRIMINATION IN VIOLATION OF TITLE VII
### (Retaliation)

71) Plaintiff re-alleges the facts asserted in paragraphs 1-52 of this Complaint.

72) Plaintiff did not have any disciplinary history during the 18 years prior to her sexual harassment complaint.

73)  Plaintiff engaged in protected activity when she originally complained of sexual harassment to Ms. Lovelace.

74) Plaintiff engaged in protected activity when she subsequently complained, three times, of the USPS supervisors' failure to investigate her sexual harassment report.

75) Within days of complaining to an HR supervisor that her sexual harassment complaint had been ignored by Ms. Lovelace for five months, Plaintiff was disciplined.

76) Plaintiff received a formal letter of warning and had her employment benefits, in terms of leave, severely reduced as a result.

77)  The reason for Plaintiff's disciplinary action was pretextual.

78) Plaintiff had to appeal the disciplinary action which was reversed several months later.

79) Failure to investigate was a retaliatory action against Plaintiff.

80)   As a direct and proximate result of the USPS' unlawful conduct, Plaintiff has suffered a loss of her future employment income and benefits, mental anguish, physical harm, distress, embarrassment, loss of reputation and other damages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Cynthia Ekeren requests the following judgment against the

Defendant USPS as follows:

1) That the practices complained of in this Complaint be determined to violate the rights secured to the Plaintiff under Title VII;

2) For all relief available to the Plaintiff, including compensatory damages consisting of losses for future employment income and benefits, mental anguish, physical harm, distress, embarrassment, loss of reputation and other damages;

3) For attorney fees and reasonable costs and disbursements as approved by the Court;

4) For such other just and further relief as the Court deems fair and equitable under the circumstances: and

5) For a trial by jury upon the issues in this matter.

Dated this 8th day of January, 2019.

JOHNSON POCHOP & BARTLING

Stephanie E. Pochop
405 Main Street
P.O. Box 149
Gregory, SD 57533
605/835-8391
Stephanie@Rosebudlaw.com
*Attorney for Plaintiff Cynthia Ekeren*

11

JS 44  (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Cynthia K. Ekeren | Megan J. Brenna, Postmaster General, U.S. Postal Service |

**(b)** County of Residence of First Listed Plaintiff   Lincoln County, SD
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Minnehaha County, SD
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Stephanie E. Pochop  Johnson Pochop & Bartling
405 Main Street |PO Box 149 Gregory, SD 57533 (605) 269-0665

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☒ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Plaintiff brings suit under 42 U.S.C SS 2000e.  (Title VII)

Brief description of cause:
Sex discrimination (hostile work environment) and retaliation.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
01/08/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Stephanie E. Pochop

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JS 44 Reverse (Rev. 12/12)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the six boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553   Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.